SILBERMAN, Judge.
A.H. (the mother) appeals from an order adjudicating her children, W.H. and Q.S., dependent. We reverse the order because the trial court’s findings are not supported by the evidence.
The Department of Children and Family Services (DCF) sheltered W.H. and Q.S. in December 2001. At the time, W.H. was living with the maternal grandmother, and Q.S. was living with the maternal grandfather. DCF filed a petition for dependency against the mother alleging that she had abused, neglected, and abandoned her children. After a trial, the court entered an order with factual findings that tracked many of the allegations contained in the petition for dependency. Based on those findings, the trial court concluded that the mother had abused and abandoned her children and adjudicated the children dependent. The mother argues that the record lacks competent, substantial evidence to support the trial court’s findings and conclusions. We agree.
In reviewing a dependency determination, we must ascertain whether DCF proved its allegations by a preponderance of the evidence, whether the trial court applied the correct law, and whether the trial court’s ruling is supported by competent, substantial evidence. See In re M.F., 770 So.2d 1189, 1192 (Fla.2000). Section 39.01(1), Florida Statutes (2001), defines “abandoned” as follows:
a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver responsible for the child’s welfare, while being able, makes no provision for the child’s support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of such parent or legal custodian, or caregiver primarily responsible for the child’s welfare, to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned .... The incarceration of a parent, legal custodian, or caregiver responsible for a child’s welfare may support a finding of abandonment.
Section 39.01(2) defines “abuse” as follows:
any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions. Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.
Concerning abandonment, our review of the record reveals that W.H. and Q.S. were each living with one of their maternal grandparents. The mother regularly visited the children, she spoke with them by telephone, and she would occasionally bring them clothes, toys, or money. The mother testified that she was letting her children live with the grandparents because she had personal problems to work out and the living arrangements provided a good environment for the children.
Although shortly before trial the mother had been arrested for an alleged violation of probation, she anticipated that she would soon be released from jail. She testified that after her release, she would get a job, raise her children, and do what is necessary to have her children with her *639 full-time. DCF did not present any evidence contradicting the mother’s anticipated release from jail or her ability and intention to care for the children.
The evidence that was presented does not support the conclusion that the mother abandoned the children. The mother and the grandparents appear to have been satisfied "with the living arrangements,[1] there was no evidence that the living arrangements were inadequate, the mother regularly called and often visited the children, and she provided the children with some support.
Although the mother acknowledged that she could have done better, the record does not demonstrate a willful rejection of her parental obligations under section 39.01, and it does not otherwise support a finding that her efforts were marginal and failed to evince a settled purpose to assume her parental duties. See In re E.B., 834 So.2d 415, 417 (Fla. 2d DCA 2003). Also, while the mother’s criminal history and incarceration are factors to be considered to determine whether abandonment has occurred, see In re T.B., 819 So.2d 270, 272 (Fla. 2d DCA 2002), the record does not reflect that these factors threatened the children’s well-being or resulted in the mother not visiting, providing for, or communicating with the children. See D.S. v. Dep’t of Children & Families, 842 So.2d 1071 (Fla. 4th DCA 2003). Because the trial court’s findings are not supported by the evidence, its conclusion that the mother abandoned the children cannot be upheld.
Turning to the question of abuse, we note that the record reflects that the mother occasionally spanked her children. Additionally, a child protective investigator testified that she had observed a small mark under W.H.’s right eye; however, nothing linked the mark to any conduct by the mother. The investigator also testified that the mother “had been arrested for things like domestic battery” and referred to the mother’s use of foul language and possibly having an anger management problem.
While the mother used corporal punishment to discipline the children, there was no evidence that she harmed either child, that she used excessive or inappropriate corporal punishment, or that she struck either child with excessive force. Her efforts to discipline the children do not constitute abuse under section 39.01(2). See K.R. v. Dep’t of Children & Families, 784 So.2d 594, 597 (Fla. 4th DCA 2001) (noting that in the absence of physical injuries, the discipline that was administered to the child was of the type exempted from the statutory definition of abuse).
Although the mother had disagreements with the grandmother that involved yelling, there was no evidence of physical altercations or violence, or that the children witnessed or were aware of any incident of domestic violence. Again, absent some showing of injury or harm to the children, or a showing that the physical, mental, or emotional health of the children was significantly impaired, the finding of abuse cannot be upheld. See § 39.01(2); K.R., 784 So.2d at 598; D.H. v. Dep’t of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000) (stating that to satisfy the harm requirement for a finding of abuse, the children must have been aware of or observed the domestic violence). Regarding the mother’s anger management *640 problem, criminal history, and the level of support that she provided to the children, nothing in the record suggests that the children were negatively affected or harmed. Based on the evidence that was presented, we conclude that the trial court erred in determining that DCF established abuse under section 39.01(2).
Because the record does not contain competent, substantial evidence of abandonment or abuse, we reverse the order of dependency.
Reversed.
WHATLEY and NORTHCUTT, JJ., concur.

. It has been noted that the parents’ decision to place children with relatives is entitled to deference because parents have fundamental rights to the care, custody, and management of their children. See In re Z.J.S., 787 So.2d 875, 879 (Fla. 2d DCA 2001) (Northcutt, J. concurring).