# Third District Court of Appeal

## State of Florida

Opinion filed August 3, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2419
Lower Tribunal No. 21-15143
_____


**M.M.W., The Mother,**
Appellant,

vs.

**J.W., The Father,**
Appellee.


An appeal from the Circuit Court for Miami-Dade County, Angelica D. Zayas, Judge.

Leslie Ann Ferderigos (Winter Park), for appellant.

Abramowitz and Associates, and Jordan B. Abramowitz, for appellee.


Before LOGUE, SCALES, and MILLER, JJ.

MILLER, J.

Appellant, M.M.W., the mother, challenges a final judgment terminating her parental rights to her two minor children, L.S.W. and A.C.W. Unlike most cases involving the termination of parental rights, the proceedings below were commenced by way of a private petition filed by the father, appellee, J.W., on the heels of acrimonious dissolution proceedings. Finding that adequate statutory grounds for termination were not pled or proven, we reverse.

## BACKGROUND

The parties wed in 2011, and their union yielded two children, L.S.W. and A.C.W., both of whom are currently under the age of nine. In 2018, the mother filed a petition for dissolution of marriage. Contentious litigation culminated in a stipulated, court-approved marital settlement agreement and parenting plan. Pursuant to the terms of the stipulation, the parents shared parental responsibility and equal timesharing. The parents agreed to abstain from alcohol, prescription drug abuse, or the use of illegal intoxicants both during and for the twenty-four-hour period preceding their respective timesharing. The mother further agreed to attend therapy and submit to daily drug and alcohol testing for ninety days.

This arrangement remained in effect for approximately one year, but the parties' relationship devolved. In early May of 2019, the father filed an

ex parte motion for full timesharing. In the motion, he alleged the mother failed to retrieve the children from school, purportedly as the result of an unconfirmed car accident, exchanged hostile and threatening text messages with the father, and transported the children to school tardy on a frequent basis.

The court granted the motion and, on May 16, 2019, ordered a psychological evaluation and substance abuse testing for the mother. The testing yielded positive results for cocaine and alcohol, and a mid-January 2020 evaluation performed by a clinical psychologist concluded the mother suffered from alcohol and other stimulant use disorder, along with associated mental health diagnoses, including anxiety and depressive disorder. The psychologist recommended residential treatment.

On May 18, 2020, the parties entered into a post-judgment mediated settlement agreement. In the agreement, the mother acknowledged she suffered from substance abuse disorder, and the parties agreed that Family Court Services personnel would endeavor to select an appropriate inpatient treatment program. The agreement separately required the mother to continue to attend outpatient treatment and comply with all further recommendations and treatment plans.

3

The father was endowed with exclusive decision-making authority and full timesharing pending the mother's compliance with one year of random drug and alcohol screening. The mother was further ordered to pay prospective child support, along with significant arrearages.

The mother did not enroll in an inpatient facility or submit regularly to testing. She did continue to attend therapy with various providers.

The father reported that he believed he observed the mother under the influence on multiple occasions, and, in October of 2020, the mother attended a remotely conducted group therapy session while apparently under the influence alcohol or another substance. When questioned during a subsequent wellness check, she attributed her condition to anti-anxiety medication.

Shortly thereafter, the mother reported the father to the Department of Children and Families, alleging abuse and neglect. The Department declined to take any action.

On March 25, 2021, the father filed a private petition to terminate the mother's parental rights. In the petition, the father alleged abandonment under section 39.806(1)(b), Florida Statutes (2020), and chronic substance abuse under section 39.806(1)(j), Florida Statutes. The mother was not offered a case plan.

4

The case proceeded to an expedited final hearing, at the conclusion of which the court granted the petition, citing chronic substance abuse under section 39.806(1)(j), Florida Statutes, and conduct threatening the lives, safety, well-being, or health of the children irrespective of services under section 39.806(1)(c), Florida Statutes. The instant appeal ensued.

As relevant to our analysis, on appeal, the mother contends: (1) her due process rights were violated because the final order terminated her parental rights on unpled statutory grounds; (2) there is no competent, substantial evidence establishing she failed or refused to submit to available treatment; and (3) the father failed to establish termination was the least restrictive means to protect the children from harm.

## LEGAL ANALYSIS

### I.    Standard of Review

Cases "involving the State's authority to sever permanently a parent-child bond[] demand[] the close consideration the Court has long required when a family association so undeniably important is at stake." M.L.B. v. S.L.J., 519 U.S. 102, 116–17 (1996) (footnote omitted); see Santosky v. Kramer, 455 U.S. 745, 787 (1982) (Rehnquist, J., dissenting) ("Few consequences of judicial action are so grave as the severance of natural family ties."). "While a trial court's decision to terminate parental rights must

be based upon clear and convincing evidence, our review is limited to whether competent substantial evidence supports the trial court's judgment." J.G. v. Dep't of Child. & Fams., 22 So. 3d 774, 775 (Fla. 4th DCA 2009). This review is "highly deferential," In re N.F., 82 So. 3d 1188, 1191 (Fla. 2d DCA 2012), and a lower court ruling will be affirmed "unless clearly erroneous or lacking in evidentiary support." N.L. v. Dep't of Child. & Fam. Servs., 843 So. 2d 996, 999 (Fla. 1st DCA 2003). Conversely, we review a claim of deprivation of due process in termination proceedings de novo. See A.M. v. Dep't of Child. & Fams., 223 So. 3d 312, 315 (Fla. 4th DCA 2017).

## II. Single-Parent Terminations

Like many states, Florida also allows a private party to file and prosecute a petition for termination of parental rights. [1]  See § 39.802(1), Fla.

---

[1] A sampling of the termination laws across this country shows that some states allow for privately filed petitions to terminate parental rights, while others do not.  See Matter of J.I.T., 866 S.E.2d 449, 450 (N.C. 2021) (allowing mother to file petition for termination of father's parental rights based on abandonment and failure to pay child support); In re Adoption of K.P.M., 201 P.3d 833, 836 (Mont. 2009) (holding stepmother had standing to file petition to terminate mother's parental rights).  But see In re Adoption of J.F., 572 A.2d 223, 225 (Pa. 1990) (noting that "a parent may not petition to terminate the parental rights of the other parent unless it is established that there is an adoption contemplated by the spouse of the petitioner"); In re Swope, 476 N.W.2d 459, 460 (Mich. Ct. App. 1991) (holding parents lacked standing to petition for termination of parental rights where child was in foster care); Osborn v. Marr, 127 S.W.3d 737, 740 (Tenn. 2004) (holding mother lacked standing to petition for termination of father's parental rights where statute allowed only prospective adoptive parent(s), licensed child-

6

Stat. (stating a petition may be filed "by the [Department of Children and Families], the guardian ad litem, or any other person who has knowledge of the facts alleged or is informed of them and believes that they are true"); Cashion v. Dep't of Health & Rehab. Servs., 630 So. 2d 1244, 1245 (Fla. 3d DCA 1994) (holding parents have standing to file petition because they have knowledge of facts alleged or are informed of them and believe they are true). In circumstances where one parent has assumed a prosecutorial role, statutory considerations unique to single-parent terminations are implicated.

The grounds for single-parent terminations are limited to those contained within section 39.811(6), Florida Statutes. Abandonment, as pled by the father in his petition, is not among them. However, both statutory factors identified by the trial court—chronic substance abuse and conduct that threatens the lives, safety, well-being, or health of the children irrespective of services—are authorized bases for single-parent termination. See § 39.811(6)(e), Fla. Stat. Thus, we examine each of the mother's assertions of error, in turn.

---

placing agency, the child's guardian ad litem, a court appointed special advocate, or the department to do so); In Int. of H.J.E., 359 N.W.2d 471, 474 (Iowa 1984) (holding biological father was not authorized to file parental rights termination petition where statute allowed only child's guardian or custodian, department of human services, juvenile court officer, or county attorney to do so).

## III. Three-Prong Test in Termination Cases

A petitioning party must first prove at least one of the enumerated statutory grounds for termination of parental rights by clear and convincing evidence. N.B. v. Dep't of Child. & Fams., 289 So. 3d 29, 32 (Fla. 3d DCA 2019). The trial court must then consider whether termination is in the best interests of the child. Finally, because the fundamental right of parents to procreate and make decisions regarding the care, custody, and control of their children is recognized by both the Florida Constitution and the United States Constitution, and the right "does not evaporate simply because they have not been model parents," Santosky, 455 U.S. at 753, a petitioning party must further prove that termination is "the least restrictive means of protecting the child from serious harm." Statewide Guardian Ad Litem Program v. A.A., 171 So. 3d 174, 177 (Fla. 5th DCA 2015).

The least restrictive means analysis springs from due process considerations. See S.M. v. Fla. Dep't of Child. & Fams., 202 So. 3d 769, 778 (Fla. 2016). When the state infringes upon this constitutionally protected relationship, it must do so in a narrowly tailored manner. A.J. v. K.A.O., 951 So. 2d 30, 32–33 (Fla. 5th DCA 2007). Thus, "the least restrictive means prong is implicit in Florida's statutory scheme based on the Court's obligation to construe statutes in a constitutional manner." S.M., 202 So. 3d at 778.

In proceedings culminating in termination, regardless of who files suit, "the end result is the same—the state, via the judicial branch, terminates a parent's constitutionally-protected parental rights." A.J., 951 So. 2d at 33. Consequently, least restrictive means applies equally to privately prosecuted termination petitions. Id.

The Florida Supreme Court has cautioned, however, that the least restrictive means prong "is not intended to preserve a parental bond at the cost of a child's future." S.M., 202 So. 3d at 778 (quoting Dep't of Child. & Fams. v. B.B., 824 So. 2d 1000, 1009 (Fla. 5th DCA 2002)). "Rather[,] . . . it simply requires that measures short of termination should be utilized if such measures can permit the safe re-establishment of the parent-child bond." Id. at 778–79 (quoting B.B., 824 So. 2d at 1009).

The test "focuses specifically on what actions were taken by the State before [the] filing [of] a petition to terminate the parent's rights." Id. at 778. Thus, ordinarily, it is satisfied where the parent was offered a case plan and provided with the help and services necessary to complete the case plan. Id. The Florida Supreme Court has further recognized in "extraordinary circumstances," including egregious abuse, termination without a case plan may satisfy constitutional concerns. In Int. of T.M., 641 So. 2d 410, 413 (Fla. 1994).

There is no statutory obligation to offer an agreement or plan in cases involving chronic substance abuse or conduct threatening the lives, safety, well-being, or health of the children irrespective of services. See § 39.806(2), Fla. Stat. The failure to do so, however, "does not eliminate [the petitioner's] burden to prove that termination is the least restrictive means, as the test is based upon fundamental parental rights." J.B. v. Dep't of Child. & Fams., 107 So. 3d 1196, 1202 (Fla. 1st DCA 2013).

## IV. Chronic Substance Abuse

The mother contends the father failed to establish termination based on chronic substance abuse. Section 39.806(1)(j), Florida Statutes, authorizes termination when the parent has "a history of extensive, abusive, and chronic use of alcohol or a controlled substance which renders [him or her] incapable of caring for the child." This statutory ground supports termination only where the parent has "refused or failed to complete available treatment for such use during the 3-year period immediately preceding the filing of the petition for termination of parental rights." Id.

In the instant case, the father adduced competent, substantial evidence the mother suffered from chronic substance abuse disorder. Although the mother did not directly harm the children, there was testimony opining the children were at risk of anticipatory neglect in the event the

10

disorder was left untreated. The father therefore satisfied the first statutory prong.

With regard to the second prong, experienced treatment providers unanimously concluded that the mother required residential treatment. In the order of termination, the trial court concluded the mother refused or failed to submit to available treatment. A careful review of the record, however, yields the opposite conclusion.

A confluence of pandemic-related delays and capacity issues initially prevented enrollment. When restrictions were eventually lifted, the mother was placed on a waiting list for an available bed. The testifying social worker, however, was unable to confirm whether the mother was ever informed that a bed became available.

Further, the mother presented uncontroverted evidence she lacked adequate financial resources to pay for residential treatment. Under these circumstances, we conclude the father failed to present competent, substantial evidence the mother refused or failed to complete available treatment. See C.A. v. Dep't of Child. & Fams., 988 So. 2d 1247, 1249 (Fla. 4th DCA 2008) (reversing a guardianship order where the mother remained on a waiting list for treatment and lacked financial resources to comply with treatment).

11

## V. Due Process Considerations

The mother next contends that she was denied due process. Her argument in this context is two-fold. First, she contends the failure to plead single-parent termination under section 39.811(6), Florida Statutes, rendered the proceedings defective, and then she asserts that reliance by the trial court on the unpled statutory grounds contained within section 39.806(1)(c), Florida Statutes, in support of termination deprived her of due process.

"Termination cases are frequently referred to as the civil death penalty for families." C.S. v. Dep't of Child. & Fams., 124 So. 3d 978, 981 (Fla. 4th DCA 2013) (Warner, J., dissenting). That is because "[f]ew forms of state action are both so severe and irreversible" as the termination of the parent-child relationship. Santosky, 455 U.S. at 759. Thus, "[a] court may not deprive a parent of a fundamental liberty interest in his or her offspring without an opportunity to assess and rebut the alleged reasons for termination." S.H. v. Dep't of Child. & Fams., 264 So. 3d 1094, 1096 (Fla. 5th DCA 2019).

We eschew the contention that a petitioning party is required to specifically plead single-parent termination. Instead, due process is satisfied when the petitioner alleges statutory grounds that the legislature has

12

authorized as a basis for single-parent termination.  Such allegations place the parent on notice that, if proven, single-parent termination is proper.  See Dep't of Child. & Fams. v. A.L., 307 So. 3d 978, 985 (Fla. 1st DCA 2020) ("Finally, DCF was not required to plead single-parent termination in order for the trial court to terminate only one of the parent's rights. . . .  [T]he parent is already on notice the petitioner is attempting to terminate their parental rights based on their independent actions, through the specific facts and termination grounds alleged in the petition as to the parent.").  This is sufficient to satisfy due process.

Our analysis regarding the second asserted issue is slightly different.  Here, the father alleged abandonment under section 39.806(1)(b), Florida Statutes, and chronic substance abuse under section 39.806(1)(j), Florida Statutes, in the petition.  The trial court properly rejected abandonment, as it is not available to effectuate a single-parent termination, and additionally found that the mother engaged in conduct threatening the lives, safety, well-being, or health of the children.  § 39.806(1)(c), Fla. Stat.

Reiterating the holding of this court in L.A.G. v. Department of Children & Family Services, 963 So. 2d 725, 726 (Fla. 3d DCA 2007), we conclude that terminating parental rights solely on a statutory ground not pled in the petition constitutes a denial of due process.  See also T.H. v. Dep't of Child.

& Fams., 226 So. 3d 915, 918 (Fla. 4th DCA 2017) (reversing final judgment to extent it terminated parental rights based on unpled grounds); D.W.Q. v. A.B., 200 So. 3d 87, 88 (Fla. 5th DCA 2015) (reversing final judgment because it cited unpled grounds for termination); R.S. v. Dep't of Child. & Fams., 872 So. 2d 412, 413 (Fla. 4th DCA 2004) (reversing order of termination entered on unpled grounds because adequate notice and meaningful hearing were required); Z.M. v. Dep't of Child. & Fam. Servs., 981 So. 2d 1267, 1269 (Fla. 1st DCA 2008) (reversing order of termination where trial court first raised unpled ground after petitioner's case-in-chief). And, here, section 39.806(1)(c), Florida Statutes, was neither alleged in the petition nor referenced in the more definite statement. The ground was not argued in opening statement or closing argument. Indeed, "[t]he first time section 39.806(1)(c) appear[ed] in this case [was] in the written termination order." L.A.G., 963 So. 2d at 726. Because the father failed to prove alternative statutory grounds for termination, we conclude reliance on this ground was in error. See id.

**VI.    Conclusion**

In closing, the mother presents compelling arguments that, under the unique circumstances of this case, the father failed to satisfy the least restrictive means test. Observing that the family court judge, Judge Valerie

14

Manno Schurr, astutely and commendably fashioned measures designed to provide the mother with an avenue for rehabilitation, while ensuring the children were "well cared for and secure," we note that many of the concerns inherent in termination cases are not present here. In re G.R., 793 So. 2d 988, 989 (Fla. 2d DCA 2001). Nonetheless, because the mother's first two issues on appeal are dispositive, we decline to reach whether the father satisfied his burden on this prong. Accordingly, we reverse and remand the final judgment under review.

Reversed and remanded.